UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

In re:                                    Civ. No. 3:12-cv-00563-AA

WILLIAMS, LOVE, O'LEARY &                 Adv. Proc. No. 11-03279-elp
POWERS, P.C.,

        Debtor.                           OPINION AND ORDER
_____

HEATHER A. BRANN,

        Appellant-Defendant,

    v.

WILLIAMS, LOVE, O'LEARY &
POWERS, P.C.,

        Appellee-Plaintiff.
_____

AIKEN, Chief Judge:

        Appellant Heather Brann appeals a decision of the United

States Bankruptcy Court concluding that Appellant's claim against

the debtor is not secured by an attorney's lien giving her claim

1    - OPINION AND ORDER

priority over other creditors' claims. After review of the Bankruptcy Court's decision and the parties' arguments, I affirm the decision.

FACTUAL BACKGROUND

This is an appeal in an adversary proceeding related to a Chapter 11 bankruptcy. Debtor-Appellee Williams, Love, O'Leary & Powers, P.C. (WLOP) is a law firm specializing in the areas of medical and pharmaceutical products liability and mass tort litigation. As pertinent to this appeal, WLOP represented over one hundred clients in products liability cases involving medical devices known as pain pumps (the pain pump cases). In these cases, the clients (the pain pump clients) alleged serious injuries arising from the post-surgical use of pain pumps to infuse pain medications directly into their shoulder joints.

WLOP entered into retainer and fee agreements with pain pump clients, with the agreements following one of two forms. Under one form of agreement, "Agreement to Hire Attorneys," the client retains WLOP, Kalur Law Office and the Law Offices of Jeffrey B. Wihtol (Wihtol) as "my attorneys" and agrees "to pay my attorneys for their services a percentage of the total recovery whether this recovery is obtained by settlement to by judgment after a trial." WLOP Suppl. Excerpt of Record (SER) 652. The agreement contemplates association of counsel and the sharing of fees among them:

> If my attorneys associate with any other attorney in another law firm, any fees earned may be shared between

2    - OPINION AND ORDER

those attorneys as well. The sharing of attorney fees will not cost me any more money because the total amount of fees I owe will remain the same, whether one law firm works on my case or whether more than one firm works on my case. I will be notified of, and will be asked to approve of, any change in these fee-sharing percentages.

WLOP SER 653.

In the second agreement, the "Pain Pump Fee Agreement," the client retains WLOP, Wihtol, and Beasley, Allen, Crow, Methvin, Portis & Miles, P.C. (Beasley-Allen) as the client's attorneys. WLOP SER 657. This agreement also provides:

Client agrees that BEASLEY-ALLEN, WILLIAMS-LOVE, WIHTOL may associate additional lawyers/firms to assist with this case and Client agrees to the sharing of fees between lawyers. Client understand the terms herein apply to other lawyers associated on this case and that association of other lawyers or law firms does not increase the amount of the attorney fee due to lawyers on successful resolution of the claim.

\*\*\*

If no recovery (by settlement or trial) is obtained, client will not owe a legal fee or expenses. If BEASLEY-ALLEN, WILLIAMS-LOVE, WIHTOL obtains settlement or judgment for Client, Client will pay to BEASLEY-ALLEN, WILLIAMS-LOVE, WIHTOL forty [percent] (40%) of the net recovery, after reimbursement of expenses.

Id.

Appellant is an attorney licensed to practice law in Oregon who entered into a contractual agreement with WLOP to provide legal services in pain pump cases. On August 17, 2009, Appellant and WLOP entered into a written agreement (effective November 1, 2008) that set forth the "terms and conditions" of Appellant's "engagement" with WLOP. WLOP SER 660-65.

3  - OPINION AND ORDER

Appellant's agreement states that WLOP "will pay" Appellant "on an hourly basis" for her legal services on pain pump matters (First-Tier-Rate fees), with additional "success-based hourly fees" if WLOP obtains favorable results in certain numbers of cases. WLOP SER 661. Specifically, if WLOP obtained favorable settlements or judgments in ten pain pump cases, Appellant would be entitled to enhanced hourly fees for her services (Second-Tier-Rate fees), and if WLOP obtained favorable results in fifty percent of its pain pump cases, Appellant would be entitled to an additional hourly-fee enhancement for her services (Third-Tier-Rate fees). Id. Appellant's agreement also provides that "WLOP shall ensure that any client with respect to which [Appellant] renders legal services for a [pain pump] matter consents to WLOP sharing its fees with [Appellant]." Id. Appellant's agreement further states:

> My hourly rates contemplate that the risk of any post-settlement or post-entry-of-judgment delay in payments to WLOP's clients, reduction of legal fees by a court, insolvency of responsible defendants (or responsible defendants' insurers), disputes by WLOP over fees with its associated counsel, or voluntary reductions by WLOP in fees or costs will be solely borne by WLOP. Such risks borne by WLOP will not, however, affect WLOP's right to dispute any legal fees or cost reimbursements billed by me to WLOP.
>
> All legal fees and costs reimbursements due to me from WLOP (including First-Tier-Rate fees, Second-Tier-Rate fees, and Third-Tier-Rate fees) will be payable to me by WLOP under the above terms, regardless of whether or not I am engaged by WLOP at the time such payment obligations arise.

WLOP SER 662.

4    - OPINION AND ORDER

On December 31, 2010, WLOP terminated Appellant's agreement pursuant to its terms. WLOP SER 660. At that time, WLOP had paid Appellant the full amount of her First-Tier-Rate fees.

In January 2011, WLOP and Appellant agreed that WLOP owed Appellant success-based Second-Tier-Rate fees, because WLOP had successfully resolved ten pain pump cases. However, WLOP asserts that it did not have sufficient funds to pay Appellant her Second-Tier-Rate fees when they became due. In June 2001, Appellant filed suit against WLOP to recover these fees.

In August 2011, WLOP filed a voluntary bankruptcy proceeding under Chapter 11. During the bankruptcy proceedings, WLOP apparently acknowledged that it owes Appellant both Second-Tier-Rate fees and Third-Tier-Rate fees, as it had successfully resolved more than fifty percent of its pain pump cases.

Appellant asserted an attorney's lien in the bankruptcy proceeding with respect to her claim for fees. WLOP then filed this adversary proceeding, seeking a declaratory judgment that Appellant does not possess an attorney's lien and is an unsecured creditor whose claims will be paid in the normal course of the proceedings. WLOP's lender, Sterling Savings Bank (Sterling) intervened in the adversary proceedings and sought a similar declaratory judgment.

On motions for summary judgment, the Bankruptcy Court found that Appellant does not have an attorney's lien and granted summary judgment in favor of WLOP and Sterling. This appeal followed.

5   - OPINION AND ORDER

STANDARD

This court reviews the Bankruptcy Court's conclusions of law de novo, while its findings of fact are reviewed for clear error. In re Schwarzkopf, 626 F.3d 1032, 1035 (9th Cir. 2010). Mixed questions of law and fact are reviewed de novo. In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).

DISCUSSION

The issue presented in this appeal is whether the Bankruptcy Court correctly found that Appellant did not have an attorney's lien giving her claim against WLOP priority over other creditors' claims. As the Bankruptcy Court emphasized, the issue on appeal is not whether WLOP owes Appellant Second- or Third-Tier-Rate fees (WLOP admits that it does), whether Appellant's contract with WLOP is enforceable (again, WLOP admits that it owes Appellant under said contract), or whether WLOP engaged in questionable conduct to shirk its contractual obligations to Appellant. Instead, the sole issue before the court is whether WLOP's fee agreements with pain pump clients, combined with Appellant's agreement with WLOP, created an enforceable attorney's lien in Appellant's favor under Or. Rev. Stat. § 87.445. That is the only issue decided by the Bankruptcy Court, and the only issue the court will consider in this appeal. Accordingly, Appellant's arguments regarding WLOP's contractual and ethical obligations are not discussed or addressed, as they are irrelevant.

6  - OPINION AND ORDER

The Bankruptcy Court found that Appellant did not possess an attorney's lien on settlements or awards from pain pump cases, because she did not contract - either expressly or impliedly - with pain pump clients regarding the payment of her fees. Instead, the Bankruptcy Court found that WLOP's fee agreements and Appellant's agreement with WLOP established that WLOP, not pain pump clients, was solely responsible for Appellant's compensation. After de novo review, I find no error.

Under Oregon law:

An attorney has a lien upon actions, suits and proceedings after the commencement thereof, and judgments, orders and awards entered therein in the client's favor and the proceeds thereof to the extent of fees and compensation specially agreed upon with the client, or if there is no agreement, for the reasonable value of the services of the attorney.

Or. Rev. Stat. § 87.445. "Under the statute, an attorney's lien is a charge on (1) actions, suits, and proceedings after the commencement thereof; (2) judgments, decrees, orders, and awards entered therein in the client's favor; and (3) the proceeds thereof to the extent of fees and compensation specially agreed upon with the client." Potter v. Schlesser Co., Inc., 335 Or. 209, 213, 63 P.3d 1172 (2003).

In other words, as cogently explained by the Bankruptcy Court, an attorney's lien is a "mechanism to enforce an attorney's right to compensation from the client." Mem. Op. at 12. Section 87.445 thus creates a lien on the client's property, based on the client's

7 - OPINION AND ORDER

obligation to pay an attorney the compensation "specially agreed upon" or the reasonable value of legal services rendered by the attorney. Potter, 335 Or. at 214-15, 63 P.3d 1172 (explaining that an attorney's lien is "a charge on the action" such that the parties to the action are obligated to satisfy the attorney's lien). Consequently, an attorney's lien in favor of Appellant must attach to one or more pain pump actions by virtue of the pain pump client's agreement to pay Appellant's fees. Democratic Cent. Comm. of Dist. of Columbia v. Washington Metro. Area Transit Comm'n, 941 F.2d 1217, 1220 (D.C. Cir. 1991) ("In sum, in order to assert a valid attorney's charging lien, there must be an agreement between client and counsel, either express or implied, that the attorney's fee would be paid from any recovery in the case."). Here, no such agreement or obligation exists.

Contrary to Appellant's assertion, WLOP's fee agreements with pain pump clients do not establish fees or compensation "specially agreed upon" by Appellant and pain pump clients or obligate the clients to pay Appellant's fees. Instead, the fee agreements require the pain pump clients to pay the specified fees to WLOP, the Kalur Law Office, and Wihtol, or to "Beasley-Allen, Williams-Love, Wihtol." WLOP SER 652, 657. In short, the fee agreements obligate pain pump clients to pay WLOP, not Appellant.

Moreover, the fact that the pain pump clients agreed that WLOP may "share" fees with associated counsel does not create a separate

8   - OPINION AND ORDER

agreement or obligation to pay the fees of associated counsel such as Appellant. The plain language of the fee agreements obligate the pain pump clients to pay only WLOP and the other identified law firms, and the pain pumps clients' "knowledge and acquiescence" of associated counsel does not establish a obligation to pay their fees. See Hahn v. Oregon Physician's Serv., 786 F.2d 1353, 1355 (9th Cir. 1985) ("[N]either knowledge and acquiescence, nor consent by the client, is sufficient to make the client liable, in the absence of the circumstances from which it can be inferred by the client that the fees are to be paid for by him.") (quoting 7A C.J.S. *Attorney and Client* § 297 (West 1980)).

Appellant's agreement with WLOP further precludes the creation of an attorney's lien. First, Appellant's agreement expressly provides that Appellant's engagement is with WLOP, that WLOP may terminate Appellant's engagement at any time, and that Appellant is providing legal services to WLOP - not to any specific pain pump client - on a "work for hire" basis. WLOP SER 660-62. Further, Appellant's agreement clearly states that WLOP "will pay" Appellant for her legal services, that Appellant will "seek reimbursement from WLOP" for her expenses, that WLOP will be subject to statutory interest if it fails to pay Appellant, that WLOP has a right to dispute Appellant's legal fees and expenses, and that "all legal fees and cost reimbursements ... will be payable to me by WLOP." WLOP SER 661-62. None of these provisions would be necessary or

9   - OPINION AND ORDER

even make sense if pain pump clients had agreed to pay Appellant's fees. Appellant's agreement also requires WLOP to "ensure" that each pain pump client consents to "WLOP sharing its fees with" Appellant, further evincing the intent that WLOP - not the pain pump client - is obligated to pay Appellant. WLOP SER 661 (emphasis added).

Second, Appellant's agreement provides that her eligibility for Second- and Third-Tier Rates is based on WLOP's overall success in a certain number or percentage of pain pump cases, regardless of "whether ... [Appellant's] legal services for such [pain pump matters] have been allocated by WLOP to one or more specific [pain pump] client." WLOP SER at 661. Thus, as found by the Bankruptcy Court, Appellant's fees are not dependent on WLOP's success in the cases for which Appellant provided legal services, or on the amount WLOP recovers in a specific pain pump case. It follows that Appellant has no attorney's lien that attaches to any particular pain pump action.[1]

Finally, Appellant's agreement expressly provides that WLOP alone will bear any and all risk of non-payment or delayed payment to "WLOP's clients," and that WLOP will pay Appellant the agreed rates regardless of whether or when WLOP actually recovers its fees

---

[1]In her reply brief, Appellant claims that her success-based rates "were only triggered when her work on the pain pump cases created the success." Reply at 8. However, this statement contradicts the plain language of Appellant's agreement with WLOP.

in pain pump cases. WLOP SER 662. In other words, Appellant's agreement expressly places the entire responsibility and burden of Appellant's fees on WLOP, not on any pain pump client. WLOP SER 662 (expressly providing that the "risk" of delayed or non-payments of judgments, monetary awards, and settlement amounts or the reduction of costs and fees "will be solely borne by WLOP"). Thus, the plain language of Appellant's agreement with WLOP precludes a finding that Appellant's legal services created an attorney's lien on the property of a pain pump client, i.e., a pain pump action.

The Ninth Circuit has addressed this issue in analogous facts and similarly found no creation of an attorney's lien. In Hahn, attorney King was retained to pursue antitrust litigation on behalf of individual podiatrists. Hahn, 786 F.2d at 1354. King's retainer agreement set forth King's compensation and authorized King to associate with counsel to assist him in the litigation. Id. Subsequently, King and his clients executed an addendum to the retainer agreement providing that King bore sole responsibility for the compensation of any associated counsel. Id. King associated with a second attorney on the case, and both attorneys ultimately withdrew from representation after filing notices of attorneys' liens.

The district court vacated the attorney's lien filed by associated counsel and disallowed any attorney's fees. The Ninth Circuit affirmed:

11  - OPINION AND ORDER

Appellant's arrangement for fees was contained solely in the agreement he executed with King, which expressly provided that King would retain overall direction and control of the case. The First Addendum to the Retainer Agreement very clearly reflects the intention of King and the doctors that any attorneys associated in the case would look exclusively to King for the payment of their fees.

Although appellant had a claim to a part of King's share in the ultimate recovery in this case, he had no claim to the recovery before distribution to King. We conclude that, because no independent contract between appellant and the doctors ever existed, appellant does not have a right to a lien against the doctors' recovery in this case even though his proper recourse for fees has been cut off as a result of King's bankruptcy.

Id. at 1355.

Similarly, Appellant's "arrangement for fees was contained solely in the agreement" she executed with WLOP, and she had no independent contract with pain pump clients for fees or compensation. Id. Further, WLOP's fee agreements do not obligate the pain pump clients to pay Appellant for her legal services. Rather, the fee agreements provide that the clients will pay only WLOP and other specified law firms, and that such fees may be shared among associated counsel. Thus, Appellant has no independent agreement with pain pump clients to establish an attorney's lien.

Appellant attempts to distinguish Hahn on grounds that WLOP's fee agreements do not expressly disclaim any obligation by the pain pump clients to pay associated counsel. I do not find such a distinction persuasive given the facts of this case. WLOP's fee agreements and Appellant's agreement with WLOP make it abundantly

12  - OPINION AND ORDER

clear that WLOP bears sole responsibility for the payment of Appellant's fees.

Despite the plain language of the relevant agreements and the Ninth Circuit's decision in Hahn, Appellant nonetheless argues that Oregon caselaw supports the creation of an attorney's lien in these circumstances. In support, Appellant primarily cites Potter, 335 Or. 209, 63 P.3d 1172, and Carson v. McMahan, 215 Or. 38, 332 P.2d 84 (1958). Appellant's reliance is misplaced, as these cases do not support her argument.

In Potter, the Oregon Supreme Court did not address whether an attorney's lien was created in favor an attorney who associated with lead counsel. Rather, it was undisputed that an attorney's lien existed, and the only issue was whether the lien could be enforced against an party-opponent who had settled with the party-client without the attorney's knowledge. See Potter, 335 Or. at 211-12, 63 P.3d 1172. The Oregon Supreme Court held that because an attorney's lien attaches to the action rather than the proceeds, the plaintiff-attorney could enforce the lien against the party-opponent, even though the proceeds from the action were no longer in the party-opponent's possession. Id. at 214-15, 63 P.3d 1172. Potter's holding has no relevance to this appeal.

In Carson, the issue involved the division of a contingent fee between attorneys in the absence of a fee-sharing agreement; the Oregon Supreme Court did not address or discuss the creation of an

13  - OPINION AND ORDER

attorney's lien. Carson, 215 Or. at 42, 332 P.2d 84. The Court ultimately found that no specific agreement existed between the attorneys and affirmed the equal division of the fee. Id. at 44, 332 P.2d 84. Therefore, Carson is inapposite.

Appellant also argues that even if she had no agreement with pain pump clients regarding compensation, an attorney's lien was created nonetheless for the "reasonable value of her services" under § 87.445. Granted, § 87.445 provides that an attorney's lien is created "to the extent of fees and compensation specially agreed upon with the client, or if there is no agreement, for the reasonable value of the services of the attorney." Or. Rev. Stat. § 87.445. However, Appellant's argument is unavailing.

First, a plain reading of the statute reveals that the phrase "if there is no agreement" pertains to the lack of agreement regarding the amount of fees or compensation, not the lack of agreement to pay the attorney in the first place. Second, Appellant fails to recognize that there is an agreement in this case, an agreement by the pain pump clients to pay WLOP, not Appellant. There is also a second agreement, Appellant's agreement with WLOP, that includes agreed-upon fees and expressly places the responsibility for Appellant's fees on WLOP and not the pain pump clients.[2]

---

[2]Taking Appellant's argument to its logical conclusion would allow attachment of an attorney's lien to a client's action even though the client has no obligation to pay the attorney.

14   - OPINION AND ORDER

In sum, neither Appellant's agreement with WLOP nor the pain pump clients' fee agreements with WLOP create an enforceable attorney's lien in favor of Appellant. While Appellant has a claim against WLOP pursuant to her agreement, she does not have an attorney's lien under § 87.445 that gives her claim priority.

CONCLUSION

For the reasons explained above, the decision of the Bankruptcy Court is AFFIRMED. Appellant's and Sterling's requests for oral argument are denied as unnecessary.

IT IS SO ORDERED.

DATED this _17_ day of November, 2012.

Ann Aiken
United States District Judge

15    - OPINION AND ORDER